808 So.2d 201 (2002)
James CRULLER, Petitioner,
v.
STATE of Florida, Respondent.
No. SC99-49.
Supreme Court of Florida.
January 24, 2002.
*202 Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Michael J. Neimand, Senior Assistant Attorney General, and M. Rebecca Springer, Assistant Attorney General, Fort Lauderdale, FL, for Respondent.
HARDING, J.
We have for review Cruller v. State, 745 So.2d 512, 512 (Fla. 3d DCA 1999), in which the Third District Court of Appeal certified conflict with the First District Court of Appeal's decision in Ward v. State, 730 So.2d 728 (Fla. 1st DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we conclude that double jeopardy does not bar convictions and punishments for robbery and carjacking.

FACTS
Petitioner James Cruller was convicted of robbery without a firearm in violation of section 812.13, Florida Statutes (1995), and carjacking without a firearm in violation of section 812.133, Florida Statutes (1995). See Cruller, 745 So.2d at 512.
Cruller's convictions stemmed from an incident in which he and an accomplice robbed the victim of his wallet, car keys, and motor vehicle after following the victim home. See id. While standing outside the victim's automobile, the accomplice pointed a gun at the victim's head and demanded his car keys. At that time, Cruller reached into the victim's pocket and stole the victim's wallet. Immediately thereafter, utilizing the stolen car keys, Cruller and his accomplice drove away in the victim's motor vehicle. See id. Cruller was charged in the information with one count of armed robbery based on theft of a wallet and money, and in a second count with armed carjacking based on the theft of the motor vehicle.
On appeal, Cruller argued that the record supported only one forceful taking of the victim's property and, therefore, his constitutional protection against double jeopardy prevented dual convictions for both robbery and carjacking. The Third District disagreed and held that "under these circumstances the defendant was properly convicted for both of the separate offenses of robbery and carjacking." Id. (citing Smart v. State, 652 So.2d 448 (Fla. 3d DCA 1995)).[1] The Third District, however, certified conflict with the First District's decision in Ward v. State, 730 So.2d 728 (Fla. 1st DCA 1999). See Cruller, 745 So.2d at 512.

THE CONFLICT CASE
In contrast to Cruller, the First District in Ward held that the defendant could not be convicted of both armed robbery and carjacking under nearly identical factual circumstances to those in Cruller. See 730 So.2d at 729-30. The First District summarized the facts in Ward as follows:
[T]he evidence established that the victim had parked her vehicle in the lot of a store, and then went into the store to do some shopping. After she had finished *203 shopping, she returned to her vehicle, pushing a cart. She opened the front passenger door and placed her purchases and her purse on the seat. As she was returning the cart, several young males, including appellant, approached her. One of them pointed a gun at the victim and told her to give them her keys and money. Appellant told the victim that the other male would shoot if she did not comply. Appellant then took the keys from the victim and gave them to one of the others. Then all of the young males, including appellant, got into the vehicle and drove off.
Id. at 729. The armed robbery charge was predicated upon the taking of the victim's keys, purse, checkbook, and money, whereas the carjacking charge was predicated upon the taking of the victim's automobile. See id.
On appeal, Ward challenged his convictions for robbery and carjacking, arguing that dual convictions for these offenses violated the Double Jeopardy Clauses of the State and federal constitutions because the convictions arose out of a single criminal act. See id. at 728. The First District reversed Ward's armed carjacking conviction, concluding that "there was only one `forceful taking.' All of the victim's property was taken as part of the same criminal transaction or episode, without any temporal or geographic break." Id. at 729-30. After applying the Blockburger[2] test, codified in section 775.021(4)(a), Florida Statutes (1995), for determining whether convictions for multiple crimes stemming from one criminal episode violated double jeopardy, the First District noted that the State conceded that armed carjacking and armed robbery contain the same statutory elements. See Ward, 730 So.2d at 729. The First District held that, under the circumstances, Ward could not be convicted of both robbery and carjacking. See id. at 730.

ANALYSIS
Cruller contends that his convictions for robbery and carjacking violate the principle of double jeopardy. The Double Jeopardy Clause protects criminal defendants from multiple convictions and punishments for the same offense. The standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate punishments for the two crimes." M.P. v. State, 682 So.2d 79, 81 (Fla.1996). Section 812.13(1), Florida Statutes (1995), defines "robbery" as
the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
Section 812.133(1), Florida Statutes (1995), defines "carjacking" as
the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the motor vehicle, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
We find that the language, structure, and legislative history of the carjacking statute represent a clear statement from the Legislature that it intended to authorize separate punishments for carjacking and robbery, when the indictment for robbery lists *204 property other than a motor vehicle.[3]Cf. Garrett v. United States, 471 U.S. 773, 779, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) ("The language, structure, and legislative history of the Comprehensive Drug Abuse, Prevention and Control Act of 1970, however, show in the plainest way that Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses."). The language of the carjacking statute mirrors the language of the robbery statute with one exceptioncarjacking pertains only to motor vehicles whereas robbery pertains to all property. The carjacking statute is a very specific subset of the more general robbery statute. When the Legislature enacted the carjacking statute, it carved out a particular type of robberythe forceful taking of a motor vehicleand made it an enhanced crime (unarmed robbery is a second-degree felony compared to unarmed carjacking which is a first-degree felony). It is apparent from the legislative history that the Legislature was alarmed by an FBI study that highlighted the growing number of carjackings in Florida. See Fla. S. Comm. on Crim. Just., CS for HB 1085 (1993) Staff Analysis (March 22, 1993). Therefore, when a defendant forcefully takes several items of property, one of which is a motor vehicle, it is clear that the Legislature intended to punish the act of taking the car separately from any other property taken during the robbery.
To reach the opposite conclusion would render an absurd result. In the present case, the defendant forcefully took a wallet and money in addition to taking a motor vehicle. The money and wallet are not covered by the carjacking statute. Under these circumstances, the defendant would receive a substantial windfall if the State were precluded from charging both carjacking and robbery of the wallet and money. In other words, if we were to adopt Cruller's position, a defendant who forcefully takes a motor vehicle could take countless other items of property and be immune from robbery prosecution for these items. The Legislature could not have intended such an anomalous result. See City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla.1983) (stating that statutes should not be given an interpretation that leads to an unreasonable or ridiculous conclusion).

CONCLUSION
Accordingly, we approve the result of the Third District's decision in Cruller. We disapprove the First District's opinion in Ward.
It is so ordered.
WELLS, C.J., and SHAW, ANSTEAD, and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
PARIENTE, J., dissents with an opinion.
PARIENTE, J., dissenting.
I respectfully dissent because, in my opinion, I believe that today's majority opinion improperly disregards the Blockburger[4] *205 test codified in section 775.021(4), Florida Statutes (1997). Moreover, for the reasons expressed below, I would adopt the rationale of the First District in Ward v. State, 730 So.2d 728, 729-30 (Fla. 1st DCA 1999), which both accepted the State's concession that armed carjacking and armed robbery contain the same statutory elements, and explained that there was only one "forceful taking" in that the victim's property was taken as part of the same criminal transaction or episode without temporal or geographic break.
In this case, Cruller was charged and convicted of robbery and carjacking, and Cruller committed both offenses during one forceful taking of a single victim's property. The taking of the property and the car was separated by neither time nor place pursuant to the parameters set forth in our recent opinion in Hayes v. State, 803 So.2d 695 (Fla.2001). There should be no argument in this case that a double jeopardy violation would have occurred if the victim's car was the underlying property charged in both the robbery and carjacking counts. Alternatively, it should also be beyond dispute that if a defendant robbed a victim of a necklace, a wallet, a watch and a purse in the course of a single forceful taking, there would be a single robbery of multiple items of property charged in a single count. Therefore, I fail to understand how a defendant charged with the taking of multiple items of property in a single forceful taking, one of which happens to be an automobile, can be charged with two separate offenses absent an express statement from the Legislature that it intended that the defendant be punished for the two offenses separately.
The majority opinion concludes, contrary to the State's concession in Ward, that the Legislature did intend to punish carjacking separately because two separate criminal statutescarjacking and robbery were involved. Therefore, the majority would conclude that the Double Jeopardy Clause is not implicated under the circumstances. However, for the reasons explained below, I fear that the majority has circumvented the double jeopardy protections articulated in Blockburger and codified in section 775.021(4).
It is clear that robbery and carjacking are the same offense under our Blockburger double jeopardy analysis. Almost seventy years ago, the United States Supreme Court fashioned the Blockburger test in order to ensure that criminal defendants are not subjected to multiple punishments or sentences for the same act or transaction absent a clear and specific intent from the Legislature. The U.S. Supreme Court articulated the Blockburger test as follows:
The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.... "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."
284 U.S. at 304, 52 S.Ct. 180 (citations omitted) (emphasis supplied).
Thus, it becomes necessary to apply the Blockburger test when, as in this case, two distinct statutory provisions are involved in the same criminal act, transaction or episode. Section 775.021 codifies the *206 Blockburger test.[5] Section 775.021(4)(b) provides a method to guide courts when determining if a defendant may be separately charged and convicted of criminal offenses that arise in the course of one criminal episode or transaction.
In Gordon v. State, 780 So.2d 17, 19-20 (Fla.2001), this Court recently reiterated the principle that "`[a]bsent a clear statement of legislative intent to authorize separate punishments for two crimes,' courts employ the Blockburger test, as codified in section 775.021, Florida Statutes (1997), to determine whether separate offenses exist." See also Gaber v. State, 684 So.2d 189, 192 (Fla.1996) ("[A]bsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the Blockburger `same-elements' test pursuant to section 775.021(4)... is the sole method of determining whether multiple punishments are double-jeopardy violations.")
In the case of robbery and carjacking, there is no explicitly expressed legislative intent to authorize separate punishments. Yet the majority concludes that "the language, structure, and legislative history of the carjacking statute represent a clear statement from the Legislature that it intended to authorize separate punishments for carjacking and robbery, when the indictment for robbery lists property other than a motor vehicle." Majority op. at 203-04 (emphasis added).
In fact, the carjacking statute is silent on whether the Legislature intends this crime to be charged separately from robbery. Furthermore, the fact that the Legislature enacted two different statutes aimed at addressing different "evils" does not satisfy the dictates of Blockburger and double jeopardy principles, for the very purpose of the Blockburger test is to provide a methodology for determining when multiple punishments are authorized for violations of different criminal statutes that arise out of the same criminal act or transaction. See Missouri v. Hunter, 459 U.S. 359, 367-68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).
Thus, this Court must apply the legislatively adopted rules of construction set forth in section 775.021(4)(b) to determine whether Cruller can be punished separately for robbery and carjacking, where the offenses are predicated on a single underlying criminal transaction. See State v. Anderson, 695 So.2d 309, 311 (Fla.1997).
As the First District explained in Ward:
Armed carjacking with a firearm is proscribed by section 812.133(2)(a), Florida Statutes (1995).... [A]ll of the elements of that offense are subsumed by the offense of armed robbery with a firearm. § 812.13(2)(a), Fla. Stat. (1995). *207 Moreover, there is nothing in either statute expressly authorizing separate convictions and sentences when both offenses arise out of a single criminal transaction or episode.
730 So.2d at 729; cf. Fryer v. State, 732 So.2d 30, 32 (Fla. 5th DCA 1999) (concluding that robbery constitutes a lesser included offense of carjacking).
I agree with the First District's conclusion that the robbery and carjacking statutes contain the same statutory elements. Section 812.13(1) defines "robbery" as
the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
Moreover, section 812.133(1) defines "carjacking" as
the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the motor vehicle, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
The only difference between the two offenses of robbery and carjacking is that robbery involves the taking of "money or other property which may be the subject of larceny," § 812.13, Fla. Stat.; whereas, carjacking is limited to "the taking of a motor vehicle which may be the subject of larceny." § 812.133, Fla. Stat. Pursuant to the statutory analysis under section 775.021(4), the robbery and carjacking statutes do not each require proof of an element that the other statute does not. Thus, robbery and carjacking are not separate offenses pursuant to the legislatively-mandated test for legislative intent set forth in section 775.021(4)(b).
The majority opines that "[t]o reach the opposite conclusion would render an absurd result" because the defendant would never be charged with the taking of the money and wallet and that "the defendant would receive a substantial windfall if the State were precluded from charging both carjacking and robbery of the wallet and money." Majority op. at 204. The majority further contends that if we were to adopt Cruller's position, a defendant who forcefully takes a motor vehicle could take countless other items of property and be "immune from robbery prosecution." Id.
First, carjacking is a first-degree felony punishable by imprisonment for a term of years not exceeding life. Therefore, the maximum punishment for carjacking is life in prison. When convictions for two separate offenses violate double jeopardy, the lesser offense is vacated. See State v. Barton, 523 So.2d 152, 153 (Fla.1988). In this case, because Cruller's convictions were for unarmed offenses, Cruller was charged with unarmed robbery, which is a second-degree felony, and carjacking, which is a first-degree felony. Thus, only the lesser offense of unarmed robbery would be vacated. Cf. Ward, 730 So.2d at 730 (where armed robbery and carjacking were both first-degree felonies punishable by life with same ranking for sentencing guidelines, either conviction could be vacated on remand). In fact, the trial court sentenced Cruller to life in prison as a habitual felony offender based on the carjacking conviction.
Second, it is clear that Cruller's taking of the property and the car constitutes a single forceful taking in this case. In our recent decision in Hayes, we reaffirmed our holding in Hearn v. State, 55 So.2d 559, 561 (Fla.1951), which held that where *208 several items of property are taken at the same time (within a matter of minutes) and from the same place, as one continuous act, a defendant could not be convicted of multiple counts of larceny for each item of property taken. Similarly, in Brown v. State, 430 So.2d 446, 447 (Fla.1983), we addressed the question of whether a defendant could be convicted of multiple counts of robbery where the defendant robbed two store employees and was charged with two counts of robbery. This Court affirmed the defendant's convictions of two counts of robbery, reasoning:
In this case the money taken by the defendant belonged to a single owner, but it was taken by force, violence, assault, or putting in fear from two separate employees. The taking was from separate cash registers, over the second of which the first employee had no control. The two events were separated in time and each required separate criminal intent. Actual ownership of the money obtained is not dispositive of the question of whether multiple robberies have been committed. What is dispositive is whether there have been successive and distinct forceful takings with a separate and independent intent for each transaction.

Id. at 447 (emphasis added). In Brown, we distinguished Hearn on the basis that "in larceny cases it is not the fact that the same owner's property is involved that controls, but rather whether there were separate events, each with a separate intent." Id. at 447. Thus, in Brown, the fact that there were robberies involving "successive and distinct forceful takings" from different employees established the basis for determining that distinct and independent criminal acts occurred.
As we recently elaborated in Hayes:
[I]n reaching a determination of the double jeopardy issue in a case involving a single victim's property, courts should look to whether there was a separation of time, place, or circumstances between the initial armed robbery and the subsequent grand theft, as those factors are objective criteria utilized to determine whether there are distinct and independent criminal acts or whether there is one continuous criminal act with a single criminal intent. In making this determination of whether there is a separation of time, place or circumstances giving rise to distinct and independent acts, courts should consider the location of the items taken, the lapse of time between takings, the number of owners of the items taken and whether intervening events occurred between the takings.
803 So.2d at 704.
Accordingly, the issue where the crimes of robbery and carjacking are charged should be whether the convictions for each crime were premised upon distinct and independent forceful takings; that is, premised upon different acts, which were separated in either time, place, or circumstances. In contrast to the factual scenario in Ward and Cruller, there is no double jeopardy violation where the circumstances involved forceful takings that were separated by time and place. For example, in Victor v. State, 774 So.2d 722, 723 (Fla. 3d DCA 2000), the Third District held that two distinct acts arose where the defendants entered the victims' vehicle at gunpoint, drove the vehicle to a different location (with the victims still inside the car), and forced one of the victim to withdraw money from an ATM machine. In Howard v. State, 723 So.2d 863, 864 (Fla. 1st DCA 1998), the First District concluded that two distinct acts occurred where the defendant took the victim's car at gunpoint and, shortly thereafter, while in a different location, took the victim's personal effects.
*209 However, in reaching the contrary conclusion in Ward that double jeopardy precluded convictions for both robbery and carjacking, the First District relied upon several district court decisions, including cases from the Third District, that found double jeopardy violations from multiple convictions of armed robbery where separate property was taken from the same victim. Ward, 730 So.2d at 730. Thus, in Fraley v. State, 641 So.2d 128, 129 (Fla. 3d DCA 1994), a defendant appealed his convictions of two counts of armed robbery, where
[d]efendant pistol-whipped and shot at the store clerk, took money from the register, and then took the clerk's personal firearm. Count I of the information charged him with armed robbery for taking cash from the victim, identified as the store and/or the clerk; Count II charged him with armed robbery for taking a firearm from the victim, again identified as the store and/or the clerk. Defendant was convicted of two separate counts of armed robbery as charged in Counts I and II of the information....
On appeal, the Third District vacated one of the armed robbery convictions, stating, "Because the two acts of taking `were part of one comprehensive transaction to confiscate the sole victim's property,' only one of those conviction can stand." Id. (quoting Nordelo v. State, 603 So.2d 36, 38 (Fla. 3d DCA 1992)).
In Nordelo, the defendant was convicted of two counts of armed robbery for taking money from a convenience store cash register and stealing the store clerk's wallet. 603 So.2d at 37. The Third District vacated one count of armed robbery, stating:
Here, it is clear that Nordelo took money from the cash register, and then shortly thereafter, from the victim. Though technical logic dictates that there were two separate acts of taking, practical logic dictates that the takings were part of one comprehensive transaction to confiscate the sole victim's property.
. . . .
We note that here, the takings are not inseparably connected in every conceivable way. Clearly, the takings can be separated. Yet, we also note that case law and logic dictates that these takings were, in reality and by their propinquity, a continuous transaction of an armed robbery of one victim.
Id. at 38-39. See also Butler v. State, 711 So.2d 1183, 1184 (Fla. 1st DCA 1998) (holding that the defendant was convicted improperly of two counts of armed robbery, whether property of the convenience store and property of the store's employee was taken from the employee "during one continuous episode"), approved, 735 So.2d 481 (Fla.1999); Horne v. State, 623 So.2d 777, 777 (Fla. 1st DCA 1993) (reversing one of two convictions for armed robbery because "[t]here was little or no temporal or geographic break between the two takings" of property from one individual); Hamilton v. State, 487 So.2d 407, 408 (Fla. 3d DCA 1986) (reversing defendant's conviction for grand theft, where the defendant also had been convicted of robbery for holding the victim up at gunpoint and stealing the victim's cash and automobile all in a single transaction); McClendon v. State, 372 So.2d 1161, 1162 (Fla. 1st DCA 1979) (reversing defendant's conviction for grand larceny, where the defendant had also been convicted of robbery for items taken "during the same continuous sequence of events").
Given these cases and the guidelines articulated by this Court in Hayes, I would conclude that the taking of the victim's wallet, car keys, and motor vehicle occurred as a result of one forceful taking at the same time and place. Unlike the facts *210 in Howard and Victor, there was minimal temporal separation and no geographical separation between the two charged offenses in this case. This case also is distinguishable from Hayes, where both a geographic and temporal separation existed where the defendant first entered the victim's residence and robbed the victim of personal property, and then exited the residence and proceeded to steal the victim's automobile. In this case, there was only a single victim and no intervening acts between the two takings.
The fact that the victim's property in Ward, which formed the basis for the armed robbery charge, was inside the motor vehicle is not a fact that, in itself, would justify a different result in Cruller than in Ward. In both cases, the victim was outside of the vehicle and there was a single forceful taking. As in Hearn, the property was stolen at the same time, from the same place, and under the same circumstances.
Furthermore, I find that the circumstances in this case are no different from such cases as Nordelo, Butler, Horne, Hamilton, and McClendon, where district courts reversed separate convictions because the takings were part of one comprehensive criminal transaction to steal a single victim's property-even though different property was taken in the course of the criminal transaction.[6] The majority would apparently disapprove these cases that would not allow multiple convictions for the taking of multiple items of property.
Therefore, for the reasons expressed above, I would quash the Third District's decision in Cruller and approve the First District's decision in Ward.
NOTES
[1] In Smart, the defendant accosted the victim at an A.T.M. and, at gunpoint, robbed him of his jewelry and wallet. 652 So.2d at 448. After an accomplice struck the victim, the defendant drove off with his car. See id. The Third District held that under the circumstances the defendant properly was "convicted and sentenced for both armed robbery of the personal effects under section 812.13(2)(a), (b), Florida Statutes (1993), and the armed carjacking of a different item, the vehicle, which is forbidden by a different statute, section 812.133(2)(a), Florida Statutes (1993)." Id.
[2] Blockburger v. United States, 284 U.S. 299, 302-04, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[3] In concluding that double jeopardy precludes punishments for both carjacking and robbery, the dissent relies on the Blockburger test. However, courts only employ the Blockburger test if there is no clear statement of legislative intent to authorize separate punishments for the two crimes in question. See Gordon v. State, 780 So.2d 17, 20 (Fla.2001). As stated above, we find that the language, structure, and legislative history of the carjacking statute represent a clear statement from the Legislature that it intended to authorize separate punishments for carjacking and robbery; hence, there is no need to employ the Blockburger test in the instant case.
[4] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[5] Section 775.021(4), Florida Statutes (1995), provides:

(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
[6] It is important to note that in Brown v. State, 743 So.2d 1213 (Fla. 4th DCA 1999), Mason v. State, 665 So.2d 328 (Fla. 5th DCA 1995), Smart v. State, 652 So.2d 448 (Fla. 3d DCA 1995), and Waters v. State, 542 So.2d 1371 (Fla. 3d DCA 1989), there are insufficient facts recited in the district court opinions to determine whether there was a temporal and geographic separation between the robbery charge and the charge arising from the theft of the motor vehicle (e.g., either grand theft auto or carjacking). This also is true of our decision in McKinney v. State, 579 So.2d 80, 84 (Fla.1991), in which the Court cited to the Third District's decision in Waters.